[Cite as *State v. Smith*, 2026-Ohio-2630.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
LICKING COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO, | Case No. 25CA00088 |
| Plaintiff - Appellee | <u>Opinion & Judgment Entry</u> |
| -vs- | Appeal from the Court of Common Pleas of Licking County, Case No. 2025 CR 258 |
| JOSEPH W. SMITH III, | Judgment:  Affirmed |
| Defendant - Appellant | Date of Judgment:  July 9, 2026 |

BEFORE: Andrew J. King, Kevin W. Popham, and David M. Gormley, Judges

APPEARANCES: Jenny R. Wells (Licking County Prosecuting Attorney) & Kenneth W. Oswalt (Assistant Prosecuting Attorney), Newark, Ohio, for Plaintiff-Appellee; Stephen T. Wolfe (Wolfe Law Group, LLC), Columbus, Ohio, for Defendant-Appellant.

*Gormley, J.*

{¶1}     Appellant Joseph Smith was found guilty by a jury on a felony charge of aggravated vehicular homicide and on four misdemeanor charges of operating a vehicle under the influence of alcohol or drugs.  He argues in this appeal that his motion to suppress certain evidence should have been granted by the trial judge, and he claims, too, that the jury's verdicts on two of the charges were not supported by the manifest weight of the evidence.  Smith challenges, as well, the trial court's imposition of a maximum prison term on the felony charge.  For the reasons explained below, we affirm the trial court's judgment.

**The Key Facts**

{¶2}     On a summertime afternoon in 2024, Smith was driving a vehicle on a two-lane road in Pataskala, Ohio when traffic in front of him came to a stop.  Unable to stay in his own lane and brake in time, Smith swerved to the left and crashed into a motorcycle that was

traveling in the opposite direction on the same road. The driver of the motorcycle died from injuries sustained in that collision.

{¶3} While investigating the crash, Pataskala police officer Daniel Downing noticed what he believed to be signs of impairment in Smith's behavior and speech. After Officer Downing learned from Smith himself that Smith had smoked marijuana the previous evening, Smith agreed to participate in field-sobriety testing. Based on Smith's performance on the field-sobriety tests, Officer Downing placed Smith under arrest for operating a vehicle under the influence of drugs. Smith then provided a urine sample, and chemical testing of that sample indicated that Smith had ingested marijuana and other controlled substances.

{¶4} After Smith was indicted on several criminal charges, he filed a motion asking the trial judge to suppress much of the evidence against him. The judge held a hearing on the motion and then denied it.

{¶5} At his trial, Smith was found guilty by a jury on one third-degree-felony count of aggravated vehicular homicide and four first-degree-misdemeanor counts of operating a vehicle under the influence of alcohol or drugs (OVI). As part of the sentence, the trial court imposed a 60-month prison term on the felony charge. Smith now appeals.

**The Trial Court Did Not Err in Denying Smith's Motion to Suppress**

{¶6} In his first assignment of error, Smith argues that the trial court should have granted his motion to suppress.

{¶7} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 2003-Ohio-5372, ¶ 8. When a trial court considers a motion to suppress, it "assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id*. As a reviewing court, we

must accept as true the trial court's factual findings if they are supported by competent, credible evidence, and we must "then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*.

{¶8} In a post-hearing brief filed after the suppression hearing, Smith withdrew any claim that the arresting officer had lacked the necessary reasonable suspicion to administer field-sobriety tests to him at the crash scene. Smith's one remaining suppression-motion argument, then, alleged that the arresting officer had no probable cause to effect a warrantless arrest of him on an OVI charge.

{¶9} Yet Smith now asks us to revive the no-reasonable-suspicion-for-field-sobriety-testing argument that he abandoned in the trial court. We decline to do so. *See State v. Semenchuk*, 2026-Ohio-804, ¶ 19 (5th Dist.) ("An affirmative waiver is the 'intentional relinquishment or abandonment of a right' and will not be recognized on appeal even as plain error") (citation omitted). Smith's trial-court waiver of any claim that field-sobriety tests should not have been administered to him eliminates any obligation on our part to review that claim now. Instead, we focus on the one suppression-motion claim that the trial court addressed: whether Smith's arrest was properly supported by probable cause.

{¶10} We recently reiterated that the test for determining whether a law-enforcement officer has probable cause to arrest a person for a suspected OVI offense is whether, "at the moment of arrest," the officer has sufficient information "derived from a reasonabl[y] trustworthy source of facts and circumstances" to cause a prudent person to believe that the suspect was driving under the influence. *State v. Benson*, 2025-Ohio-2699, ¶ 15 (5th Dist.). In evaluating that determination, a reviewing court must "examine the 'totality' of facts and circumstances surrounding the arrest." *State v. Homan*, 89 Ohio St.3d 421, 427 (2000).

{¶11} The State presented testimony from several witnesses at the suppression hearing, including drivers of the two vehicles that were directly in front of Smith's vehicle on the day of the crash. Both of those persons testified that when traffic came to a halt on the roadway that day, they were able to stop their vehicles safely, with the driver who had been right in front of Smith that day estimating at the suppression hearing that Smith had been four or five car lengths behind her and would have had enough time to stop his vehicle without rear-ending hers.

{¶12} Pataskala police officer Daniel Downing then testified that when he arrived after the crash, Smith was seated in his vehicle and appeared to be unaware of what was going on. Officer Downing noticed that Smith had cloudy eyes and droopy eyelids at the scene, and Downing testified, too, at the suppression hearing that Smith spoke slowly and mumbled on the crash date. Downing also observed what he described as Smith's rigid arm movements and his delayed responses to questions posed to him after the crash, and the officer also said that Smith had swayed after he stepped out of his vehicle and appeared to be experiencing some involuntary muscle contractions.

{¶13} After Smith admitted that he had, at around 10 p.m. the previous evening, smoked marijuana, Officer Downing determined that field-sobriety tests should be administered to Smith. On the field-sobriety walk-and-turn test, Officer Downing saw Smith stop while walking and make an improper turn. On the one-leg-stand test, Smith, according to the officer's suppression-hearing testimony, swayed and raised his arms higher than six inches. As for Smith's performance on the so-called modified Romberg balance test — during which the participant is instructed to stand with the feet together, the head tilted slightly back, and the eyes closed and then is told to say "stop" once that participant believes that 30 seconds

have passed — Officer Downing observed what he described at the suppression hearing as eyelid tremors.

{¶14} The officer's own observations of and conversations with Smith on the day of the crash, as well as the officer's analysis of the crash scene and his conversations with a police-department colleague and with the other drivers who were at the scene when the crash occurred, led that officer — as he indicated at the suppression hearing — to conclude that Smith was under the influence of drugs or alcohol on the crash date. The trial judge who presided over the suppression hearing found in turn that Officer Downing had administered the field-sobriety tests in accordance with accepted standards or methods and found that the officer's decision to arrest Smith was properly supported by probable cause.

{¶15} We agree that the arrest was a proper one. The officer's decision to arrest Smith was based not only on Smith's performance during the field-sobriety tests but also on the totality of the facts and circumstances made known to Officer Downing during his investigation of the crash. *See State v. Bahen*, 2016-Ohio-7012, ¶ 39 (10th Dist.) ("[p]robable cause to arrest does not have to be based, in whole or in part, upon a suspect's poor performance on one or more field sobriety tests") (quotations and citation omitted). Officer Downing testified that he observed indicia of impairment throughout his interactions with Smith. *See State v. Schmitt*, 2004-Ohio-37, ¶ 12 (any lay witness, including a police officer, can testify as to whether an individual appears intoxicated) and *State v. Antonellis*, 2005-Ohio-5381, ¶ 19 (5th Dist.) (a trooper's observations were sufficient to constitute probable cause even without field-sobriety tests). And even Smith's act of causing the fatal collision could be considered an indication of intoxication that justified his arrest on an aggravated-vehicular-homicide charge as well as on an OVI charge. *See State v. Tipple*, 2017-Ohio-2774, ¶ 20 (5th

Dist.) ("[p]robable cause to arrest may exist, even without field sobriety test[ ] results, if supported by such factors as: evidence that the defendant caused an automobile accident; a strong odor of alcohol emanating from the defendant; an admission by the defendant that he or she was recently drinking alcohol; and other indicia of intoxication, such as red eyes, slurred speech, and difficulty walking").

{¶16} The trial judge properly denied Smith's motion to suppress.

## The Jury's Verdicts Were Not Against the Manifest Weight of the Evidence

{¶17} In his second assignment of error, Smith contends that his convictions on the aggravated-vehicular-homicide charge and on one of the OVI charges were against the manifest weight of the evidence.

{¶18} In determining whether a conviction was against the manifest weight of the evidence, an appellate court acts "as a 'thirteenth juror,' and after 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be [reversed] and a new trial ordered.'" *State v. Hane*, 2025-Ohio-120, ¶ 20 (5th Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). The reversal of a conviction on manifest-weight grounds should occur only in "the 'exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*

### *Aggravated Vehicular Homicide*

{¶19} In seeking to prove that Smith committed the offense of aggravated vehicular homicide under R.C. 2903.06(A)(2)(a), the State had to show that Smith acted recklessly when he operated a motor vehicle and caused the death of another. A person acts recklessly,

according to R.C. 2901.22(C), when, "with heedless indifference to the consequences," he or she "disregards a substantial and unjustifiable risk" that his or her conduct is "likely to cause" a particular result or is likely to be of a particular nature.

{¶20} The testimony presented at the jury trial echoed the suppression-hearing testimony summarized above. The drivers of the two vehicles traveling in front of Smith testified that although traffic came to a quick stop, Smith would have had enough time to stop his vehicle without colliding into the back of the vehicle directly in front of him. Both of those other drivers also testified that Smith did not apply his brakes in time and instead veered left of center and collided with a three-wheeled motorcycle.

{¶21} The jury also heard about one of the explanations that Smith had offered to law-enforcement officers at the scene when he was asked why the crash had occurred: a claim that the brakes on his vehicle did not work well. At the trial, a mechanic who owned an auto-repair shop testified that he inspected the brakes on Smith's vehicle after the crash and determined that the brakes were working normally.

{¶22} Much of the balance of the trial evidence focused on whether Smith was under the influence of drugs at the time of the crash. Several law-enforcement officers testified about their observations during their interactions with Smith, both before the field-sobriety tests were administered and after Smith was arrested, and Officer Downing testified at length about his observations of Smith while Downing administered the field-sobriety tests. In addition, a criminalist from the Ohio State Highway Patrol's crime lab testified about the post-crash chemical testing of Smith's urine and about the results of that testing, which showed the presence of amphetamine, methamphetamine, marijuana metabolite, and cocaine metabolite above Ohio's legal limits for drivers.

{¶23}   Evidence that a defendant was driving under the influence of alcohol or drugs can be sufficient to support a finding of recklessness.  *See State v. Thompson*, 2021-Ohio-376, ¶ 68 (8th Dist.); *State v. Ward*, 2003-Ohio-5847, ¶ 9 (4th Dist.); and *State v. Rohaley*, 1998 Ohio App. LEXIS 6549, *8 (5th Dist.) ("driving under the influence, standing alone, may be sufficient to support a finding of recklessness").

{¶24}   When confronted with traffic coming to a stop in front of him, Smith failed to apply his brakes as quickly as he should have.  And when Smith concluded that he could not stop his vehicle in time, he veered left of center and collided head-on with the motorcycle.  Other courts have found recklessness in similar circumstances.  *See State v. Robertson*, 2023-Ohio-2200, ¶ 32 (3d Dist.) (reckless conduct found where a defendant was speeding and "deliberately chose to move into [the victim's] lane to try and avoid a collision"); *State v. Kavlich*, 33 Ohio App.3d 240, 245 (8th Dist. 1986) (evidence that a defendant had a blood-alcohol content above the legal limit, veered his car over the center line, and collided head-on with another vehicle was sufficient to show recklessness rather than mere negligence).

{¶25}   After thoroughly reviewing the entire record, and after weighing the evidence and all reasonable inferences that could be drawn from it, we conclude that the jury did not lose its way.  A guilty verdict on the charge of aggravated vehicular homicide was supported by the evidence, does not equate to a manifest miscarriage of justice, and was not so clearly wrong that reversal is required.  Nothing in the record indicates to us that this case presents the type of "exceptional case in which the evidence weighs heavily against the conviction." *Thompkins*, 78 Ohio St.3d at 387.

*Operating a Vehicle Under the Influence of Alcohol or Drugs*

**{¶26}** Smith also challenges the jury's guilty verdict on the charge of operating a vehicle while under the influence of alcohol or drugs. Smith does not challenge the jury's guilty verdicts on the three other OVI charges, which alleged that he operated a vehicle with prohibited concentrations of marijuana metabolite, methamphetamine, and cocaine metabolite.

**{¶27}** According to Smith, no reasonable jury could have found him guilty of operating a vehicle while impaired. We disagree.

**{¶28}** R.C. 4511.19(A)(1)(a) prohibits operating a vehicle while that operator is "under the influence" of alcohol, a drug of abuse, or a combination of them. At the jury trial, Officer Downing again testified about his investigation of the crash and his observations of Smith. In his initial interactions with Smith, the officer told jurors, he noticed that Smith had droopy eyelids and that the whites of his eyes were very hazy. The officer also noted Smith's mumbled speech and rigid body movements. And the officer in his trial testimony told jurors, too, about his observations of Smith during the field-sobriety tests and about the signs of impairment that he saw during both the standardized tests and some additional tests, such as the modified Romberg test, an alphabet test, and a counting test.

**{¶29}** One of Officer Downing's police-department colleagues also testified at the trial, and she told jurors that Smith's speech at the crash scene was very delayed, that he was easily distracted that day, and that he had difficulty organizing his thoughts. That officer also told jurors that Smith was unable to answer a question that she posed to him while he was looking for his insurance information. And that officer was the one to whom Smith admitted having smoked marijuana at around 10:00 p.m. the previous evening — some 18 hours before

the crash — which was one of the factors that led Officer Downing to administer the field-sobriety tests.

{¶30} The observations of these two officers, combined with testimony about the crash and about Smith's performance on the field-sobriety tests, support the jury's finding that Smith operated his vehicle while under the influence of drugs. Also, the jury was shown video footage from the body-worn cameras of both Officer Downing and his colleague Officer Justice, and the jury could draw its own conclusions about whether the officers' testimony was supported by that video evidence.

{¶31} Based on our review of the record, we find that the jury's verdict on the charge of operating a vehicle under the influence of alcohol or drugs was neither obviously erroneous nor contrary to the manifest weight of the evidence.

## The Trial Court Did Not Err in Imposing the Maximum Prison Term on the Aggravated-Vehicular-Homicide Charge

{¶32} Smith's last assignment of error challenges the trial court's imposition of a 60-month prison term — the longest possible prison term — on the F3 aggravated-vehicular-homicide charge.

{¶33} A defendant may, under R.C. 2953.08(A)(1), appeal a sentence that includes a "maximum definite prison term" for an offense. But we are permitted by the (G)(2) provision of that statute to undo a felony sentence if and only if "clear[] and convincing[]" evidence indicates either that the trial court's sentencing-related findings are not supported by the record or that the sentence is "otherwise contrary to law." R.C. 2953.08(G)(2).

{¶34} When considering whether that latter phrase — the "otherwise contrary to law" language — applies to a trial court's sentence, we are not permitted to overturn or alter the sentence "based on the lack of support in the record for the trial court's findings under R.C.

2929.11 [explaining the overriding purposes of felony sentencing] and 2929.12 [directing the trial court to consider various factors tied to the seriousness of the crime in question as well as various other factors relevant to the likelihood that the defendant will commit other crimes in the future]." *State v. Jones*, 2020-Ohio-6729, ¶ 29. *See also State v. Ogden*, 2025-Ohio-1168, ¶ 14 (4th Dist.) ("this court cannot review a felony sentence when appellant's sole contention is that the trial court improperly considered the factors of R.C. 2929.11 or 2929.12"); *State v. Truesdell*, 2024-Ohio-5376, ¶ 79 (1st Dist.) ("an appellate court may not independently weigh the evidence in the record and substitute its judgement for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12").

{¶35} Smith argues that the trial court's failure to give any justification for the imposition of the maximum prison term on the felony charge was unreasonable and arbitrary.

### *Smith's Failure to Object in the Trial Court to the Sentence Imposed There Limits Our Review of That Sentence Here*

{¶36} Before we turn to the merits of Smith's argument, we note that Smith did not object at the sentencing hearing once the trial judge announced the sentence. That misstep now poses a significant hurdle for him because, as we reiterated just last year, "[a]n error 'that was not called to the attention of the trial court at a time when the error could have been avoided or corrected by the trial court' is deemed forfeited absent plain error." *State v. Bright*, 2025-Ohio-725, ¶ 7 (5th Dist.), quoting *State v. Haudenschild*, 2024-Ohio-407, ¶ 15 (5th Dist.). *See also* Crim.R. 52(B) and *State v. Whitaker*, 2022-Ohio-2840, ¶ 166 ("because Whitaker failed to object to the imposition of consecutive sentences at the sentencing hearing, he has forfeited this issue, absent plain error").

{¶37} After the trial judge announced the sentence in the case, the judge asked Smith, as well as both of his trial attorneys and the State, whether any other matters needed to be

addressed. One of Smith's attorneys asked that appellate counsel be appointed for Smith, and the State brought to the trial judge's attention that the fine announced by the judge for the OVI charge was incorrect, but no alleged error concerning the length of the prison term was brought to the trial judge's attention. In light of the fact that Smith was given "a meaningful opportunity to express the concerns that [he] now raises here," and because Smith did not object to the sentence imposed, we review Smith's sentence solely for plain error. *Bright* at ¶ 9.

### We See No Plain Error in the Sentence

**{¶38}** "To constitute plain error, an error 'must be on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection.'" *Id.* at ¶ 10, quoting *State v. Dunlap*, 2004-Ohio-6652, ¶ 34 (8th Dist.). "'Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

**{¶39}** To achieve the "overriding purposes of felony sentencing" — protecting the public from future crime, punishing the offender, making whole any victims and the public, and rehabilitating the offender, all of which are to be accomplished with the least onerous and least costly sanctions available — the trial court should "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." R.C. 2929.11(A).

**{¶40}** And listed in R.C. 2929.12 are several factors that trial courts in felony cases must consider when weighing not only the seriousness of the offender's conduct but also his or her likelihood for committing future crimes. That statutory provision also makes plain —

in R.C. 2929.12(A) — that the trial court retains "discretion to determine the most effective way to comply" with the lofty overriding purposes described in R.C. 2929.11.

{¶41} "Although a trial court must consider the factors in R.C. 2929.11 and 2929.12, there is no requirement that the court state its reasons . . . for imposing a particular sentence within the statutory range." *State v. Webb*, 2019-Ohio-4195, ¶ 17 (5th Dist.). The Revised Code also does not require that the trial court "use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors." *State v. Arnett*, 88 Ohio St.3d 208, 215 (2000), citing R.C. 2929.12.

{¶42} At the sentencing hearing, the trial judge heard from several of the crash victim's family members. Counsel for the State also noted that Smith had been convicted of felony drug offenses in the past. And the trial judge mentioned, too, that Smith was under post-release-control supervision when he committed the offenses at issue in this case and had apparently violated a ban on the use of any non-prescribed controlled substances while under that type of supervision.

{¶43} After indicating that he had considered the purposes and principles of sentencing set out in R.C. 2929.11 as well as the seriousness and recidivism factors set out in R.C. 2929.12, the trial judge noted that Smith's offenses caused a severe impact. The trial judge then imposed the 60-month prison term on the F3 aggravated-vehicular-homicide charge, which was, under R.C. 2929.14(A)(3)(a), the maximum prison term that could be imposed for that offense. (And of course this was a mandatory prison term under R.C. 2903.06(E)(2) and R.C. 2929.13(F)(4).)

{¶44} We see no error — and certainly no plain error — in the sentence imposed by the trial court. Given that the judge complied with the applicable sentencing statutes, we have

"no basis for concluding" that the prison-term portion of the sentence was contrary to law. *State v. Hess*, 2024-Ohio-2842, ¶ 33 (5th Dist.). *See also State v. Boyd*, 2025-Ohio-984, ¶ 53 (2d Dist.) ("A [felony] sentence is contrary to law when it falls outside the statutory range for the offense or if the sentencing court does not consider R.C. 2929.11 and 2929.12").

{¶45}  For the reasons explained above, the judgment of the Court of Common Pleas of Licking County is affirmed.  Costs are to be paid by Appellant Joseph Smith.

By: Gormley, J.;

King, P.J. and

Popham, J. concur.